## McINTYRE *v.* McINTYRE.

1. Where a first application for a new trial is made on discretionary grounds, the trial judge must exercise his discretion in approval or disapproval of the verdict. The order overruling the motion for a new trial in this case showing on its face that the judge did not exercise the discretion which the law vested in him, a new trial must result, unless the evidence demanded the verdict. This is true though the failure of the judge to exercise his discretion was not made the subject of a special exception.

2. Where a paper found among a decedent's papers is offered for probate as a will, and appears to have been canceled or obliterated in a material part, a presumption arises that the cancellations or obliterations were made by the deceased and that he intended them to operate as a revocation.

3. The rule of the English courts, that cancellations with a lead pencil are presumed to have been deliberative and not final, has not been generally adopted by the American courts.

4. The rule of presumption above stated applies where the cancellations are made with a pencil ; but the fact that they are so made may be considered by the jury, with other evidence, in determining whether the presumption of revocation has been rebutted.

5. Joint operation of act and intention is necessary to revoke a will.

6. Where an act is done by the testator which may or may not amount to revocation, revocation will not result if it appears that the act was dependent upon the efficacy of another act, such as the making of a new will, and that the testator did not intend to revoke his will unless the other act was consummated.

7. But where the will is completely revoked, the failure of another contemplated act can not revive it.

8. The evidence did not demand the verdict rendered. The charge of the court was in the main correct, but in some respects not altogether accurate. The propounder was not an incompetent witness:for the reason assigned in the motion for a new trial.

Argued April 9, — Decided May 12, 1904.

Probate of will.    Before Judge Barrow.    Chatham superior court.    June 20, 1903.

*Osborne & Lawrence,* for plaintiff in error.
*Adams & Adams,* contra.

SIMMONS, C. J.    A paper alleged to be the last will and testament of Edward McIntyre was propounded for probate.   A son of the deceased filed a caveat on the ground that the paper, though once a will, had been revoked by cancellation and obliteration. The finding of the ordinary was in favor of the caveator, and the propounder appealed to the superior court, where a verdict and judgment were rendered setting up the paper offered for probate as the will of the deceased.   A motion for a new trial was filed by the caveator, and on the hearing the following order was passed: "In this case it appeared to me at the trial that the evidence inclined against the will, but the jury are the sole and exclusive judges of all questions of fact, and I have no more right to require them to take the facts of the case from the court than they have to require me to take the law from them.   Upon this branch of the motion, therefore, I think it would be an usurpation of power to interfere with the verdict upon the ground that the evidence did not authorize it, for the reason that there is sufficient evidence to support the verdict."   The order then recited that no error of law was committed and that a new trial would not be granted. The caveator excepted.

1. The application was for a first new trial, and was based partly upon discretionary grounds, that is, that the verdict was contrary to the evidence and decidedly and strongly against the weight of the evidence.   The order indicates that the trial judge did not exercise the discretion which the law contemplates he shall exercise in every such case where the evidence is conflicting. The order is very similar in verbiage to that passed in *Thompson* v. *Warren,* 118 *Ga.* 644, where a new trial was ordered by this court solely on the ground that the trial judge had not exercised any discretion with reference to the approval or disapproval of the verdict.   It is contended that *Thompson* v. *Warren* is not controlling, because in that case there was a special exception raising the point upon which the decision was made, whereas there is no such exception in the present case.   We do not think this a valid

distinction, or that it was necessary to do more than file a general exception to the overruling of the motion. It is to be noted that in neither of the somewhat analogous cases of *Rogers* v. *State*, 101 *Ga.* 561, and *Central Ry. Co.* v. *Harden*, 113 *Ga.* 453, both of which are cited in *Thompson* v. *Warren*, was there any special exception. The judgment must be reversed on this ground, irrespective of others, unless, as contended, the verdict was demanded by the evidence.

2. The paper offered for probate had been duly and legally executed as a will. Some time after its execution the testator drew pencil lines through certain portions of the will, and also caused slips of blank paper to be pasted over certain clauses in the will, through which pencil lines appear to have been previously drawn. The lines were lightly drawn and left the writing perfectly legible. The will purported to have been executed in Effingham county, and a line was drawn through the word Effingham, and the word Chatham written in pencil to the left. The abbreviation "Edwd." in the name of the testator was canceled in the same way and the full name of Edward written above it. The remainder of the formal part of the will was left intact. Pencil lines were then drawn through nine or ten lines making bequests to testator's wife and son, and over some of these lines a blank slip was pasted. The fourteen lines following were unaltered, these describing certain real estate and personal property, and stating that they were given to — a blank slip being pasted over the name of the beneficiary. On this slip was written, "leave two lines," and diagonally to the right and above the slip was written, " 2 blank lines." The clause following was dealt with in the same way, the name of the beneficiary being covered with a slip of paper on which was written, " 3 lines." No slip was pasted over the name of the beneficiary of the property described in the next clause, but pencil lines were drawn through it, and the words " 2 blank lines" written in pencil to the right. Pencil lines were drawn through the next clause disposing of a share of stock in a corporation to testator's grandson. The following clauses, providing for the payment of debts, making disposition of cemetery lots, nominating testator's wife as executrix, and conferring upon her certain powers, were left intact. The date upon which the will appeared to have been executed was canceled with pencil lines, and the words "two (2)

blank lines" written to the left. Pencil lines were also drawn through testator's signature and through the signatures of the witnesses, and the names of three other persons written to the left.

As a general rule, the burden is on a person attacking a paper offered for probate as a will to sustain the grounds of his attack. But by express provision of our statute, where a will has been canceled or obliterated in a material part, a presumption of revocation arises, and the burden is on the propounder to show that no revocation was intended. Civil Code, § 3343. See also *Howard v. Hunter*, 115 *Ga.* 358; Cutler *v.* Cutler (N. C.), 57 L. R. A. 209. How far the cancellation or obliteration must extend before this presumption will arise is not settled. See Malone's admr. *v.* Hobbs (Va.), 39 Am. Dec. 266. Where the paper is found among the testator's effects, there is also a presumption that he made the cancellations or obliterations. See cases cited in note to Graham *v.* Burch, 28 Am. St. R. 351. The presumption that revocation was intended will certainly arise where the testator draws lines through and pastes slips of paper over clauses of the will disposing of portions of his property, and also draws lines through his signature and those of the subscribing witnesses. It having been shown that the paper offered for probate in this case had been in the custody of the deceased up to the time of his death, the propounder was met with both of the presumptions above alluded to.

3–4. There are cases, chiefly English, holding that a cancellation with a pencil is presumptively deliberative and not final, and no presumption of revocation arises from such cancellations. See 2 Gr. Ev. (16th ed.) § 681, p. 626, note 12; Mence *v.* Mence, 18 Ves. Jr. 348, and cit. in footnote (a). The American cases generally do not adopt this rule. Townshend *v.* Howard, 86 Me. 285; Woodfill *v.* Patton, 76 Ind. 575, 40 Am. R. 269; Gardner on Wills, § 81, p. 258. Mr. Underhill characterizes the English rule as absurd, and says that " the true rule is that the cancellation of a will in lead pencil is only one fact to be considered in determining the effect of the cancellation and the intention with which it was made. Where a will is produced with lead pencil cancellations, it will be presumed that they were done by the testator *animo revocandi*; and it is upon the party claiming that they were deliberative and not final to establish that fact." 1 Und. Wills, § 230. This statement of the law expresses our views.

5. Joint operation of act and intention is necessary to revoke a will. Howard *v.* Hunter, supra.  As aptly and concisely expressed by James, L. J., in Cheese *v.* Lovejoy, 2 P. D. 251–253, " All the destroying in the world without intention will not revoke a will; nor all the intention in the world without destroying; there must be the two."   Here we have certainly the act, and an act of such a character as to give rise to a presumption of intention to revoke. It is contended that the evidence demanded a finding that this presumption had been rebutted; but this contention, as we shall presently show, can not be sustained.

6, 7. Reference is made in the brief of counsel for the defendant in error to what is known as the doctrine of "dependent relative revocation."   Under the operation of this doctrine it has been held that if a testator cancel or destroy a will, with a present intention to make a new will as a substitute for the old, and the new will is not made, or if made fails of effect for some reason, it will be presumed that the testator preferred the old will to an intestacy, and this testament will be given effect.   We believe this doctrine to be sound, when properly understood and properly qualified.   It is a doctrine of presumed intention, and has grown up as a result of an effort which courts always make to arrive at the real intention of the testator.   Some of the cases appear to go to extreme lengths in the application of this doctrine, and seem to defeat the very intention at which they were seeking to arrive.   The doctrine, as we understand it and are willing to apply it, is this:   The mere fact that the testator intended to make a new will, or made one which failed of effect, will not alone, in every case, prevent a cancellation or obliteration of a will from operating as a revocation.   If it is clear that the cancellation and the making of the new will were parts of one scheme, and the revocation of the old will was so related to the making of the new as to be dependent upon it, then if the new will be not made, or if made is invalid, the old will, though canceled, should be given effect, if its contents can be ascertained in any legal way.   But if the old will is once revoked,—if the act of revocation is completed,— as if the will be totally destroyed by burning and the like, or if any other act is done which evidences an unmistakable intention to revoke, though the will be not totally destroyed, the fact that the testator intended to make

a new will, or made one which can not take effect, counts for nothing.      In other words, evidence that the testator intended to make or did actually make a new will, which was inoperative, may throw light on the question of intention to revoke the old one, but it can never revive a will once completely revoked.⌉  See, on the subject, Page on Wills, § 276; Schoul. Wills (3d ed.) § 398; Pritch. Wills, § 272; 1 Woer. Am. Law Adm. (2d ed.) § 48, *90–91; Semmes *v.* Semmes, 7 Har. & J. (Md.) 388; Banks *v.* Banks, 65 Mo. 432; Hairston *v.* Hairston, 30 Miss. 276; Wilbourn *v.* Shell, 59 Miss. 205, 42 Am. R. 363; Gardner *v.* Gardner (N. H.), 8 L. R. A. 383; Will of Penniman (Minn.), 18 Am. R. 375; Johnson *v.* Brailsford (S. C.), 2 Nott & M. 272; In re Olmsted's Est. (Cal.), 54 P. 745, 747; Thomas *v.* Thomas (Minn.), 79 N. W. 104; Townshend *v.* Howard (Me.), 29 A. 1077; notes to Graham *v.* Burch, 28 Am. St. Rep. 345.  ⌊Applying what has been said to the facts of the present case, the following result is reached:    There was evidence from which the jury could have found that when the testator canceled the old will he intended to make a new one.    The canceled paper itself bore evidence of such an intention.  ·  If this was his intention, and he did not intend for the cancellation to operate as a revocation unless the new will was made, then the finding ought to be in favor of the propounder.    On the other hand, there was evidence from which a jury could find that the cancellation was intended to operate as a revocation; and if this is the truth, the finding ought to be against the will, notwithstanding it may appear that the testator contemplated the making of another will.    These are questions for the jury to decide.⌋  The matter finally turns upon the intention of the testator, and no mere presumption can be allowed to defeat this intention when it has been made to appear.

8.    The evidence did not demand the verdict rendered.  A witness for the caveator testified that he was present in the room during the last illness of the deceased, and that he said to his son, the caveator, "Willie, I have left a pencil memorandum of a will —it is not a will—I was not 'able to finish [or complete] it; but I call upon Willie to carry out the provisions of this pencil memorandum."    The witness testified positively and unequivocally that this was the exact language of the deceased.  Where the issue is revocavit vel non, the declarations of the testator are, in this

State, admissible, "although made at any time between the making of the will and the death of the testator." *Patterson* v. *Hickey*, 32 *Ga.* 156.　The reply made by the propounder to this evidence is, that, while admissible, it is of slight evidentiary value, and counts for nothing when weighed against the other evidence that the testator did not intend a revocation; and that, properly construed, the declaration itself really shows that the testator regarded the paper as his will.　We have been unable to take this view of the matter.　The evidence is of an explicit declaration by the testator that the paper was not his will, but contained only memoranda for a will.　The request to the son was to carry out the provisions of memoranda and not of a will.　If not his will, it must have been revoked, for it was once a will.　The preponderance of the evidence may have been to the effect that the testator did not intend a revocation, but it can not be said that there was no evidence to the contrary.　We send the case back that it may be retried in accordance with the views herein expressed.　The motion for a new trial contains several grounds, but most of them are covered in the foregoing discussion.　One ground complains that the court allowed Mrs. McIntyre, widow of the deceased, and propounder of the will, to testify, the objection being that she was "interested in the result of the suit."　Since the passage of the evidence act of 1866 and its amendments, interest does not disqualify a witness, but goes merely to his credit.　Error is not assigned upon any portion of the testimony of Mrs. McIntyre, nor is it contended that she is disqualified as a witness under any of the provisions of the act of 1889 (Civil Code, § 5269), the sole objection being that she is interested.　As to her competency to testify to transactions and communications between herself and the deceased, see *Buchannan* v. *Buchannan*, 103 *Ga.* 90 (1). The charge of the judge was, in the main, fair and accurate. The instruction on the subject of the burden of proof was, however, not altogether accurate.

*Judgment reversed.　All the Justices concur*