MORRIS *et al.* *v.* BULLOCK *et al.*

No. 11866.    NOVEMBER 12, 1937.    REHEARING DENIED DECEMBER 8, 1937.

*Barrett & Nall,* for plaintiffs in error.

*Paul L. Lindsay, Paul L. Lindsay Jr.,* and *R. G. Turner,* contra.

RUSSELL, Chief Justice. Counsel for the plaintiffs in error in their brief argue and insist only on two propositions: (1) That the alteration made in the alleged will was so material as to create a presumption of an intention on the part of the testatrix to revoke the same entirely; and that, no evidence having been introduced by the propounders to show a contrary intention, this presumption of intention was not rebutted. (2) That since the alteration and consequent revocation appeared on the face of the instrument, the court erred in allowing it in evidence. After discussing these questions the brief concludes as follows: "We next consider the ground of the caveat, that the will was not signed in the presence of the testator, and the testator did not sign in the presence of the attesting witnesses nor acknowledge the same to them. Due to the illness of one of counsel for plaintiffs in error, and the engagement of the other in the trial of a case in the United States district court for the last four weeks, we respectfully request leave to file a supplemental brief covering other questions of law not discussed." No supplemental brief has been filed; so assignments of error based on the "other questions of law not discussed" are treated as abandoned.

The Code, § 113-404, declares: "An express revocation may be effected by any destruction or obliteration of the original will or a duplicate, done by the testator or by his direction with an intention to revoke; such intention will be presumed from the obliteration or canceling of a material portion of the will; but if the part canceled is immaterial, such as the seal, no such presumption shall arise." It was ruled, in *McIntyre* v. *McIntyre, 120 Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606): "Where a paper found among a decedent's papers is offered for probate as a will, and appears to have been canceled or obliterated in a material part, a presumption arises that the cancellations or obliterations were made by the deceased and that he intended them to operate as a revocation." In the opinion it was said: "The paper offered for probate had been duly and legally executed as a will. Some time after its execution the testator drew pencil lines through certain portions of the will, and also caused slips of blank paper to be pasted over certain clauses in the will, through which

pencil lines appear to have been previously drawn. The lines were lightly drawn and left the writing perfectly legible. The will purported to have been executed in Effingham County, and a line was drawn through the word Effingham, and the word Chatham written in pencil to the left. The abbreviation 'Edwd.' in the name of the testator was canceled in the same way and the full name of Edward written above it. The remainder of the formal part of the will was left intact. Pencil lines were then drawn through nine or ten lines making bequests to testator's wife and son, and over some of these lines a blank slip was pasted. The fourteen lines following were unaltered, these describing certain real estate and personal property, and stating that they were given to—— a blank slip being pasted over the name of the beneficiary. On this slip was written, 'leave two lines,' and diagonally to the right and above the slip was written, '2 blank lines.' The clause following was dealt with in the same way, the name of the beneficiary being covered with a slip of paper on which was written, '3 lines.' No slip was pasted over the name of the beneficiary of the property described in the next clause, but pencil lines were drawn through it, and the words '2 blank lines' written in pencil to the right. Pencil lines were drawn through the next clause disposing of a share of stock in a corporation to testator's grandson. The following clauses, providing for the payment of debts, making disposition of cemetery lots, nominating testator's wife as executrix, and conferring upon her certain powers, were left intact. The date upon which the will appeared to have been executed was canceled with pencil lines, and the words 'two (2) blank lines' written to the left. Pencil lines were also drawn through testator's signature and through the signatures of the witnesses, and the names of three other persons written to the left. . . As a general rule, the burden is on a person attacking a paper offered for probate as a will to sustain the grounds of his attack. But by express provision of our statute, where a will has been canceled or obliterated in a material part, a presumption of revocation arises, and the burden is on the propounder to show that no revocation was intended. Civil Code, § 3343. See also *Howard* v. *Hunter,* 115 *Ga.* 358 [41 S. E. 638, 90 Am. St. R. 121]; Cutler *v.* Cutler [130 N. C. 1, 40 S. E. 689, 57 L. R. A. 209, 89 Am. St. R. 854]. How far the cancellation or oblitera-

tion must extend before this presumption will, arise is not settled. See Malone's admr. *v.* Hobbs, [1, Rob. (Va.) 346] 39 Am. Dec. 266. Where the paper is found among the testator's effects, there is also a presumption that he made the cancellations or obliterations. See cases cited in note to Graham *v.* Burch, 28 Am. St. R. 351. The presumption that revocation was intended will certainly arise where the testator draws lines through and pastes slips of paper over clauses of the will disposing of portions of his property, and also draws lines through his signature and those of the subscribing witnesses. It having been shown that the paper offered for probate in this case had been in the custody of the deceased up to the time of his death, the propounder was met with both of the presumptions above alluded to. . . There are cases, chiefly English, holding that a cancellation with a pencil is presumptively deliberative and not final, and no presumption of revocation arises from such cancellations. See 2 Gr. Ev. (16th ed.) § 681, p. 626, note 12; Mence *v.* Mence, 18 Ves. Jr. 348, and cit. in footnote (a). The American cases generally do not adopt this rule. Townshend *v.* Howard, 86 Me. 285 [29 Atl. 1077]; Woodfill *v.* Patton, 76 Ind. 575, 40 Am. R. 269; Gardner on Wills, § 81, p. 258. Mr. Underhill characterizes the English rule as absurd, and says that 'the true rule is that the cancellation of a will in lead pencil is only one fact to be considered in determining the effect of the cancellation and the intention with which it was made. Where a will is produced with lead pencil cancellations, it will be presumed that they were done by the testator animo revocandi; and it is upon the party claiming that they were deliberative and not final to establish that fact.' 1 Und. Wills, § 230. This statement of the law expresses our views. . . Joint operation of act and intention is necessary to revoke a will. Howard *v.* Hunter, supra. As aptly and concisely expressed by James, L. J., in Cheese *v.* Lovejoy, 2 P. D. 251-253, 'All the destroying in the world without intention will not revoke a will; nor all the intention in the world without destroying; there must be the two.'"

In *Hartz* v. *Sobel,* 136 *Ga.* 565 (71 S. E. 995, 38 L. R. A. (N. S.) 797, Ann. Cas. 1912B, 165), it was ruled: "1. A testatrix, after the execution of her will, cut therefrom two items giving bequests of money, and cut from another item, in which a

bequest of money had been given to two of her nephews, the name of one of them, and also cut out the name of the same nephew as an executor, and removed other words and pluralizing letters which showed that there were more legatees than one in the last-mentioned bequest and more executors than one nominated. The will was propounded without such parts which had been cut therefrom. Evidence was introduced to show that the testatrix did not intend to revoke the entire will, but only to revoke the parts eliminated therefrom, and that she retained the instrument, after such cutting, as being her will. *Held,* that under the statute of this State a revocation of a will pro tanto by canceling, obliterating, or destroying such part is not authorized. 2. Under the facts stated in the preceding headnote, if the testatrix did not intend to revoke the entire will, but only the particular legacies and the appointment of the executor, which were cut therefrom, a revocation of the entire will would not result as matter of law from such cutting. 3. If a will was duly executed, and when propounded for probate it appeared that certain words had been cut from it by the testatrix, with a view to making a pro tanto revocation only as to three bequests of money and the appointment of a certain executor, and it could be shown what such words were, they could be restored by evidence, and the will as originally executed admitted to probate. 4. Under such circumstances, a legatee whose name was thus cut from the will may, when the will is propounded, enter a caveat to its being probated in its incomplete condition, and may plead and prove what were the words removed from the will, and pray that it be probated as originally executed. He is not compelled to merely file a caveat to the probating of the will as propounded, and then in a separate litigation propound the same will with the addition of the missing words and clauses."

In the opinion delivered by Mr. Justice Lumpkin it was said: "The testatrix, after executing a will, cut from it with some sharp instrument two items and also certain words. When the will was propounded for probate, there were vacant places where these words had been, but the will presented was connected and expressed a complete testamentary scheme without the omitted words and items. By witnesses it was shown that a carbon copy of the will, except as to the signature and attestation, had been preserved. From this it appeared that the two items which had been cut out

gave two legacies of $1000 and $100 respectively, but did not affect the general testamentary purpose. The words which were cut from the will eliminated one of the nephews of the testatrix from an item where there was bequeathed to two of her nephews the sum of $5000 each, and also eliminated him from the clause appointing executors, leaving the bequest and appointment to stand as to the other nephew. The evidence strongly indicated that the testatrix did not intend to cancel or revoke her entire will, but only in the particulars mentioned, and that she preserved it and regarded it as her will in force after she had cut the words from it." The court then discusses at length the history of the law of revocation of wills in England and the United States, and proceeding on page 576 says: "Let us now consider more particularly the law of this State on the subject of revocation of wills. The English statute of frauds was included in the digests of the laws preceding the original Code, and this continued as late as the publication of Cobb's Digest in 1851, where it will be found on page 1127 et seq. By the act of 1852, the law as to the revocation of wills devising realty was also made applicable to those bequeathing personalty. (Acts 1851-52, p. 104.) When the first Code (which took effect on January 1, 1863) was adopted, the article on the subject of revocation of wills contained nine sections. By section 2438 it was declared that a will, having no effect until the death of the testator, is necessarily revocable by him at any time before his death. Section 2439 declared that 'A revocation may be either express or resulting. An express revocation is where the maker by writing or acts annuls the instrument. An implied revocation results from the execution of a subsequent inconsistent will.' It then dealt with the time when such revocation took effect. Section 2440 declared that an express revocation, by written instrument, must be executed with the same formality as that required for the execution of a will. It also dealt with the effect of destroying a revoking will and the revival of a will by republication. Section 2441 was as follows: 'An express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke; such intention will be presumed from the obliteration or canceling of a material portion of the will; but if the part canceled be immaterial, such as the seal, no such pre-

sumption arises.' Section 2442 was as follows: 'In all cases of revocation, the intention to revoke is necessary to make it effectual. An express clause of revocation will not operate upon a testamentary paper, where it is manifest that such was not the intention.' Sections 2443 and 2444 dealt with inconsistent provisions in a subsequent will, and inconsistent clauses in the same will. Section 2445 provided that the marriage of the testator, or the birth of a child to him, subsequently to the making of a will in which no provision was made in contemplation of such event, should revoke the will. Section 2447 dealt with codicils and the subject of republication. These sections have been included in each subsequent Code, including the last one, which was adopted in 1910. §§ 3916-3924 [Code of 1933, §§ 113-401 to 113-409, inclusive].

"It will be seen that no express reference was made to revocation pro tanto, except in the provision that an 'implied revocation [by a subsequent will] extends only so far as the inconsistency exists,' and that any portion of the first will, which can stand consistently with the testamentary scheme and bequests in the last, shall remain unrevoked. On the subject of revocation pro tanto by destruction or obliteration the Code is silent. It has been more than once said that the Code ' subsequently ' adopted the English statute of frauds. But it is evident that there are some changes which must have been intentionally made. In the first place the reference to revocation of a clause or devise by destruction or obliteration, contained in the English statute, was left out. In the English statute, prior to the Victorian statute of wills, the acts of revocation, other than by writing, were mentioned as 'by burning, canceling, tearing, or obliterating.' The language of the Code is 'by any destruction or obliteration of the original will.' These words may be sufficiently broad, in connection with their context, to cover the other terms employed in the English statute, but they do not follow it literally. Again, under the English statute, the erasing or canceling of one or more clauses, although they might be substantial or material in their character, did not generally affect the rest of the will, unless it left the remainder unintelligible, and thus necessarily operated as a revocation of the whole. Under the Code it is provided that an intention to revoke the will will be presumed from the obliteration or cancellation of a mate-

rial portion of it. It is argued that the word 'material' meant essential. But the language of the Code indicates that it does not use the word in so restricted a meaning. It illustrates what is immaterial in Georgia by reference to the seal. In Black's Law Dictionary the word ' material ' is defined to mean ' important; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form.'

"The question of increasing or diminishing an estate by means of an erasure or obliteration seems not to have been discussed in the earlier English cases. In the *Larkins* case, supra [3 Bos. & Pul. 14], which was decided in 1802, Rooke, J., said: 'It is rather extraordinary that this point should now come to be decided for the first time.' When the codifiers dealt with the subject of revocation of wills, not only having before them the English statute of frauds, but doubtless investigating also the decisions which had been made on the subject, they formulated the sections cited, which were generally similar to the English statute of frauds, but did not follow its exact terms. While they were codifiers and not legislators, four times the Code, containing these same provisions, has been adopted. We think that the section touching the revocation of a will by obliteration, canceling, or the like should be construed in harmony with the construction of similar statutes by other courts in reference to the subject now under consideration. And, under a proper construction thereof as embodied in section 3919 of the Code of 1910, the statement that 'an express revocation may be effected by any destruction or obliteration of the original will, or a duplicate, done by the testator, or by his direction, with an intention to revoke,' dealt with an express revocation of the entire will, and not a clause or part thereof, by destruction or obliteration. The obliteration or canceling by the testator of a material portion of the will raises a presumption of an intention to revoke the whole.

"If, then, our statute does not provide for the revocation of a clause or part of a will by destruction or obliteration of it, the next question which arises is what shall be the effect of such an obliteration, if actually made, with intent not to revoke the entire will but only a particular clause or part thereof. The presiding judge expressed his view on this subject in the following part of a charge or opinion which he delivered before directing a verdict. 'The in-

tention to revoke, in the opinion of the court, does not mean, in its legal sense, that it is necessary, if there be an intentional obliteration or destruction of some part of the will, that the intention should relate to the destruction or obliteration of the whole will, in order to be effective to destroy and obliterate and revoke the entire will; but if a part of the will material in its character, and in the opinion of the court, any legacies eliminated from the will by cutting them out physically so as to obliterate and destroy the continuity of the will is, to that extent, such a declaration on the part of the testator as shows an intent to revoke, and the intent goes in law, whatever in point of fact may have existed in the mind of the testator, but that, in law, it goes to the revocation of the instrument completely and not pro tanto.' In this view we can not concur. Aside from the construction of our Code or similar statutes, it has always been held that revocation involves both act and intent. In Malone's administrator *v.* Hobbs, 1 Rob. 346 (39 Am. D. 363), Baldwin, J., said that 'A cancellation or destruction, to effect a revocation of the whole instrument, must be directed against the whole, or an essential part of it.' In Brown's Will, 1 B. Mon. 56 (35 Am. D. 174), Robertson, C. J., said: 'The obliteration or cancellation of a portion of a testamentary paper, by the testator himself, is admitted to be an equivocal act, the legal effect of which generally depends on extrinsic proof of the accompanying circumstances indicating the intention, and therefore, although the prima facie import of an act of cancellation may be that it was done animo revocandi, yet that presumption may be repelled by parol proof of facts showing that the animus cancellendi applied only to so much of it as had been actually canceled.' Section 3920 of the Code of 1910 declares, that, 'In all cases of revocation, the intention to revoke is necessary to make it effectual.' If the revocation referred to is of the entire will, it must be an intention to revoke the entire will. The statement in section 3919, that 'such intention will be presumed from the obliteration or canceling of a material portion of the will,' can not mean a conclusive presumption. If so, it would have been much simpler to state that the obliteration or cancellation of a material portion of the will operated as a cancellation of the will as a whole. If the obliteration or canceling of a material part merely raises a prima facie presumption of an intention to revoke the

whole, and the intention to revoke must exist in all cases to make the revocation effectual, it can not be held that the testatrix revoked her entire will, whether she intended to do so or not. Parol evidence was admissible to rebut such presumption. In *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 71 Am. St. R. 501), it was held that 'Joint operation of act and intention is necessary to revoke a will.' Dealing with the subject of whether certain erasures and obliterations were made with intent to revoke a will absolutely or were dependent upon the making of a new will, Chief Justice Simmons said: 'The matter finally turns upon the intention of the testator, and no mere presumption can be allowed to defeat this intention when it has been made to appear.'

"In *Burge* v. *Hamilton,* 72 *Ga.* 568, a will, as offered for probate, was written on ten pages. Pages 1, 2, 3, 4, 5, 7, and 9 were clearly numbered, and without alteration in the numbering. On page six the numbering appeared to have been changed from 5 to 6. On page 8 the numbering appeared to have been altered from 7 to 8. On the last page the numbering at the top of the page had been altered from 11 to 10. At the bottom of this page was the number 11. The entire will was in the handwriting of the testator, and his signature was on each of the pages. Each page contained a separate paragraph of the will. A codicil was executed, in which it was stated that the will was approved except as altered by the codicil. The latter was written on pages numbered 12, 13, and 14, and was attached to the paper offered for probate. Parol evidence was offered to show that the will was in the same condition when the codicil was executed and attached to it as when it was offered for probate, and that the will was executed as it was offered. The caveators attacked it, among other reasons, because it showed on its face that a part of it was missing. The main question discussed was the admissibility of the evidence. But in the course of his opinion, after citing numerous authorities, Chief Justice Jackson said: 'These references to able text-books and cases decided show that by the English law parol evidence is admissible,' first, to explain certain ambiguities; . . and sixthly, that a will, identified in part, will not be refused probate as to that part because of the uncertainty of other probable parts, the contents of which lost or missing parts are unknown. And these adjudications are not affected by or based upon any statute of Vic-

toria or other modern law, but are constructions of the old law. How do the Georgia statutes and adjudications of this court affect this law? So far from detracting from its force, we think that the laws of this State not only confirm it, but enlarge its scope in many respects.' Under this decision, if the parts eliminated could not be shown, and their contents were unknown, but there was an intelligent testamentary paper remaining, the mere possibility that the missing parts might have affected the testamentary scheme as a whole would not prevent the probate of what was left. We thus reach the question, where it can be shown with certainty what were the words thus eliminated, and the statute does not recognize such eliminations as a revocation pro tanto, shall the will be probated without such words, or with them reproduced, so that the will shall stand as it was before the mutilation? Under the statute of Victoria, if the words or clauses were entirely absent, the will would be probated without them. The cases already cited show that in the United States, where statutes do not recognize or authorize revocation pro tanto, an effort to cancel, erase, or obliterate certain words or clauses would simply be disregarded, and the will would be probated as if no such effort had been made, if the obliterated words could be ascertained."

We think that the alteration made in the will in this case, including the notation written in pen by the testatrix, "I do not give High Museum anything," shows clearly that the intention of the testatrix was only to revoke the second item of the will, which devised described articles of personalty to the High Museum of Art of Atlanta. Under the ruling in the *McIntyre* case, the alteration is presumed to have been made by the testatrix, since the paper was found in a safety-deposit box in a bank with her other effects after her death. But under the decisions in the *McIntyre* and *Hartz* cases, as to what constitutes such a material alteration as to create a presumption of an intention to revoke the entire will, and since "The materiality of an alteration is a question of law" (Code, § 20-803), we think the court properly determined that the alteration in this will was intended only to effect a revocation pro tanto, which is not allowed in Georgia by obliteration or cancellation. This being true, and no evidence being introduced tending to show the contrary, the general rule that "the burden is on a person attacking a paper offered for probate as a will to sustain

the grounds of his attack," is applicable. The court did not err in directing the verdict in favor of the propounders, or in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*