23887. HOWARD v. COTTON, Executrix, et al.

ARGUED JANUARY 9, 1967—DECIDED JANUARY 19, 1967—
REHEARING DENIED FEBRUARY 9 AND FEBRUARY 23, 1967.

120

*Robert H. Herndon,* for appellant.

*G. L. Dickens, Jr., George S. Carpenter, Jr.,* for appellees.

DUCKWORTH, Chief Justice. In considering the motion of appellee for a rehearing we invited briefs on the question of whether there was an issue of fact for the jury. This opinion is written after consideration of this motion. The obliterations, cancellations and markings out of most of the material portions of the original will are set out in the statement of facts.

*Code* § 113-404 provides that an express revocation of a will may be effected by any destruction or obliteration done by the testator, or by his direction, with an intention to revoke; and such intention will be presumed from the obliteration or canceling of a material portion of the will. This will was obliterated and canceled in the major part thereof. Very material portions were so canceled or obliterated with different material provisions written therein by pen. In this condition the above Code section interposes a presumption that there was an intent to revoke the whole will. And this presumption must be rebutted by evidence showing the obliterations and cancellations were not

done with the intent to revoke the whole will. Counsel for the propounder leans heavily upon *McIntyre v. McIntyre,* 120 Ga. 67 (47 SE 501, 102 ASR 71, 1 AC 606); *Hartz v. Sobel,* 136 Ga. 565 (71 SE 995, 38 LRA (NS) 797, AC 1912D 165); and *Morris v. Bullock,* 185 Ga. 12 (194 SE 201, 115 ALR 700), to support his contention that there is evidence to authorize the jury's finding that the presumption of intent to revoke was rebutted. The *Hartz* case, supra, is the most extreme case we have found where the will was probated despite obliterations and cancellations. There, the testatrix had actually completely cut material portions from the will. The portion cut was a devise to Sidney Hartz of a sum of money; also his name as one of the executors was cut out. It was shown that the testatrix, shortly before her death, said she intended that Morris Hartz, the other executor, should manage her affairs and that the conduct of Sidney, the joint executor and a devisee, was unbearable to her; that she considered he had disgraced the family; and she would not recognize him in any way whatever. To another witness she said, in referring to a paper held in her hand, "This is my will, and I have made all the changes in it I want to do. . . I have one particularly. I have cut Sidney Hartz out." On that showing with the cut out portions proven and restored to the will, it was probated and this court approved. This, in spite of the proven fact that she did not intend for the person who she said disgraced the family to receive her property, yet the restored will gave it to him. Then in the *Morris* case, supra, the item of the will giving described property to High Museum of Art had written therein with pen and ink: "I do not give High Museum anything." The will was found in its changed condition in the lock box of the testatrix. The opinion quotes extensively from the *McIntyre* case, supra, the *Hartz* case, supra, and other decisions. Then at page 25 it is said: "We think that the alteration made in the will in this case, including the notation written in pen by the testatrix, 'I do not give High Museum anything,' shows clearly that the intention of the testatrix was only to revoke the second item of the will which devised described articles of personalty to High Museum of Art of Atlanta. Under the ruling in the *McIntyre* case, the alteration is pre-

sumed to have been made by the testatrix, since the paper was found in a safety-deposit box in a bank with her other effects after her death. But under the decisions in the *McIntyre* and *Hartz* cases, as to what constitutes such a material alteration as to create a presumption of an intention to revoke the entire will, and since 'The materiality of an alteration is a question of law' (*Code* § 20-803), we think the court properly determined that the alteration in this will was intended only to effect a revocation pro tanto, which is not allowed in Georgia by obliteration or cancellation. This being true, *and no evidence being introduced to show the contrary,* the general rule that 'the burden is on a person attacking a paper offered for probate as a will to sustain the grounds of attack' is applicable. The court did not err in directing the verdict in favor of the propounders." (Emphasis supplied.) What we have just quoted completely contradicts the statute (*Code* § 113-404) which attaches to such obliterations or cancellations of that material portion of the will a presumption that they were done with an intention to revoke the whole will. The burden is by statute placed upon the propounder to rebut this presumption with evidence showing no intention to revoke. In the older decision, *Porch v. Farmer,* 158 Ga. 55, 62 (122 SE 557), with all the Justices concurring, probate was reversed where material obliterations and cancellations appeared on the will and no evidence was produced to rebut the presumption of an intent to revoke the whole will. This court said: "There is nothing in the evidence to show that anyone other than Mrs. Seay [testatrix] had access to or made the mutilations and obliterations in the will; and although it may have been done by others, and it may work a hardship, we must take the case as we find it, and holding, as we do, that the presumption of law is, under the facts, that Mrs. Seay had revoked the will by mutilations of material parts thereof, and this presumption not being rebutted by proof, we feel constrained to hold that the jury was not authorized to find a verdict in favor of the propounder, under the evidence." To the same effect see *Singleton v. Shewmake,* 184 Ga. 785 (193 SE 232).

Thus stands the law. We consider now the evidence as it

tends to reflect the intention of the testatrix. We believe the testimony of Mrs. Sloan, the attorney, who drew the original will in 1958, is all that touches the question of intent. This attorney testified that she had drawn a series of wills over the years for the testatrix, this being the last one; that the testatrix was constantly changing her mind as to the disposition of her estate by wills. We note that as a policy she revoked wills to suit her change of mind. As to the 1958 will testatrix telephoned her and said she had changed with her own hand portions of the will; that she then advised her she feared the will was thus ruined, and the testatrix became alarmed; but despite this legal advice, and notwithstanding any alarm, testatrix proceeded, when the attorney went to her home, to direct the attorney to make numerous other material changes by writing them into the will with a pen. The attorney left carrying the obliterated changed will with her for guidance in re-drafting the will. When she left, testatrix asked her to type it as quickly as possible and get it back to her, and she smiled, and said: "Will you hurry, because, remember, I don't have a will." The attorney testified that she had led her to believe she had no will. She also testified that the original and altered will definitely differed considerably as to the testamentary scheme. The attorney wrote a new will embodying all the changes, but when she presented it, testatrix had further alterations written therein, and before she could re-draft it and get it executed, Mrs. Miller died. Practically all of this testimony supports rather than rebuts the presumption of intent to revoke, and none rebuts it from the time the attorney obliterated or changed material portions as directed. While the attorney said she was alarmed when she advised her that she had probably ruined her will, and the attorney testified that she caused her to say she had no will; after receiving this advice from her attorney, whom she trusted, she proceeded forthwith to direct the attorney to further obliterate and cancel as a guide for writing another will. Undoubtedly, she intended to revoke by the writing thereon by her attorney at her direction after knowing that the attorney believed it would revoke the will. She then said she had no will. She proceeded in haste to procure another will. This was not a case of revoking on con-

dition that a valid new will would be executed, but rather revoking without condition, and then making every effort to get another will executed, which was thwarted only by death. There was no evidence to rebut the presumption of intent to revoke the whole will, and the verdict in favor of the propounder is contrary to law and the evidence.

*Judgment reversed. All the Justices concur.*