## S00A0273. LOVELL v. ANDERSON.
### (533 SE2d 64)

FLETCHER, Presiding Justice.

In this will contest case the caveator contends that the testator intended to revoke his will when he made obliterations of a material portion of the will. The issue is whether the statutory presumption of revocation by obliteration[1] coexisting with the common law presumption that the testator acted to effect the revocation[2] will carry the caveator's burden against the propounder's motion for summary judgment. We conclude that these presumptions existing together are sufficient to withstand summary judgment and, because the basic facts proven are sufficient to invoke both presumptions, we reverse the trial court's grant of summary judgment.

Jeremiah E. Field executed a will in 1983 leaving his entire estate to the four children of his nephew, Frank Saxon. Item II of the will provided:

> I give, devise and bequeath all of my property, both real and personal, and wherever situated, to the four children of my nephew, FRANK SAXON, who are: RANDALL M. SAXON, CARLTON LANCE SAXON, ROBERT KENT SAXON and AMY REBECCA SAXON, equally, share and share alike, per stirpes.

Following his death in 1997 his will was offered for probate by Anderson, the executor of the will. Field's grand-nephew Lovell filed a caveat contending that Field had revoked his will by material obliterations he made prior to his death.

Field's will was found in his pick-up truck. The names of Randall M. Saxon and Amy Rebecca Saxon had been struck through with ink and were illegible. The probate court recognized the statutory presumption of revocation which arises from a material obliteration to a

---

[1] Former OCGA §§ 53-2-74; 53-4-44, effective July 1, 1998.

[2] Where there is a caveat to a will based on revocation by obliteration, there is a common law presumption that "[w]here the [altered will] is found among the testator's effects, there is also a presumption that he made the cancellations or obliterations." *Carter v. First United Methodist Church of Albany,* 246 Ga. 352, 353 (271 SE2d 493) (1980), quoting *McIntyre v. McIntyre,* 120 Ga. 67, 70 (47 SE 501) (1904); see also *Morris v. Bullock,* 185 Ga. 12, 18 (194 SE 201) (1937).

will, but concluded there was no evidence that Field intended to revoke his will, and admitted the will to probate.

Following an appeal for de novo review to the superior court,[3] both parties filed motions for summary judgment. While acknowledging the issues were close, the trial judge granted the propounder's motion.

1. The statutory presumption of OCGA § 53-4-44 provides:

> An express revocation may be effected by any destruction or obliteration of the will done by the testator with an intent to revoke or by another at the testator's direction. The intent to revoke shall be presumed from the obliteration or cancellation of a material portion of the will, but such presumption may be overcome by a preponderance of the evidence.

Therefore, the threshold issue presented is whether the obliteration of the names of two of the four beneficiaries of the entire estate is "material" within the meaning of the statute.[4] Whether an obliteration is material such as will invoke the statutory presumption that the testator intended to revoke his will is a question of law for the court.[5]

We conclude that the obliteration of the names of two of the four beneficiaries, whom the testator designated were to take "equally, share and share alike, per stirpes," was material because it directly affected the distribution of all property in the estate.[6] This finding of a material obliteration gave rise to a rebuttable presumption under OCGA § 53-4-44 that Field intended to revoke his entire will.[7]

2. To effect a revocation of a will by obliteration, in addition to the requirement that the obliteration be material, there must be proof of a joint operation of act and intent.[8] That is, the caveator

---

[3] See OCGA § 5-3-29.

[4] The caveator bears the burden of proving that an obliteration has occurred and that it is material. *Wells v. Jackson*, 265 Ga. 181, 182 (453 SE2d 690) (1995).

[5] Id. at 182, n. 1; *Carter v. First United Methodist Church*, 246 Ga. at 354.

[6] Looking to the four corners of the will to ascertain the testator's total testamentary disposition, we conclude that he intended to devise all of his property equally to four named individuals rather than to a class as is argued by the propounder. The beneficiaries are designated by name and the will contains no language evidencing an intent that they take as a class rather than as individuals. There is certainty as to who will take and the share each will take. And, finally, the testator made provision for the appointment of a testamentary guardian for any minor beneficiaries who may receive property under the will by virtue of being "children or descendants" of the four named beneficiaries. These indicia of the testator's intent are inconsistent with a class gift. *Snellings v. Downer*, 193 Ga. 340 (2) (b) (18 SE2d 531) (1942); *In re Lewis*, 263 Ga. 349, 351 (434 SE2d 472) (1993); Sarajane Love, *Redfearn Wills and Administration in Georgia*, § 164 (5th ed. 1988).

[7] *Howard v. Cotton*, 223 Ga. 118, 122 (153 SE2d 557) (1967).

[8] *Carter v. First United Methodist Church*, 246 Ga. at 355; *Morris v. Bullock*, 185 Ga. at

must show both that the testator made the material obliterations or directed another to do so and that the testator intended for this act to revoke the will.

Lovell contends that he satisfied his burden for purposes of summary judgment through the presumption of revocatory intent found in OCGA § 53-4-44 and the common law presumption that the testator made the obliterations to the will where the will is found among his effects. While these are presumptions of law[9] which are rebuttable,[10] they will preclude summary judgment in favor of the propounder if they are authorized by the facts.[11]

When an obliterated will is found among the testator's effects or in his custody, a common law presumption arises that the testator made the obliterations.[12] Field's obliterated will was found in his pick-up truck along with other personal items, but with no other "important papers." Because a vehicle may be particularly personal to its owner, it may be a repository for a testator's effects.

We reject Anderson's assertion that the common law presumption could not apply as a matter of law because others may have had access to Field's truck. The mere possibility of this occurrence does not foreclose the applicability of the common law presumption. Rather, as this Court held in *Porch v. Farmer,*[13] where the obliterated will is found among the testator's effects, in order to overcome the presumption that the testator made the obliterations, the propounder is required to demonstrate by competent evidence that someone other than the testator had access to the will and made the alterations.[14] Mere evidence of opportunity for mischief is therefore insufficient to rebut the presumption.[15]

---

18.

[9] OCGA § 24-4-20 defines presumptions of law as "conclusions and inferences which the law draws from given facts." Presumptions of law "are those inferences that have a common law or statutory pedigree that gives them some special legal effect." Paul Milich, *Georgia Rules of Evidence*, § 5.1 (1995).

[10] OCGA § 53-4-44; *Porch v. Farmer*, 158 Ga. 55, 59 (122 SE 557) (1924); see also *Jefferson Standard Life Insurance Co. v. Bentley*, 55 Ga. App. 272 (190 SE 50) (1937) (presumptions of law "may be rebutted by proof.").

[11] See Milich, *Georgia Rules of Evidence*, § 5.3 (quantum of proof at summary judgment stage relatively light; at directed verdict stage, must be sufficient for rational jury to "find the facts necessary to sustain the party's position.").

[12] See footnote 2.

[13] 158 Ga. 55.

[14] Id.

[15] This is the rule in other jurisdictions. See *In re Estate of Ausley*, 818 P2d 1226, 1229-1230 (Okl. 1991) (fact that testator and proponent had access to obliterated will would not destroy presumption that testator made obliterations and intended to revoke it by mutilation until evidence was offered that the will was in "unfriendly possession"); *In re Tyler's Estate*, 112 NE2d 668 (Ohio 1953) (obliterated will found in testator's file cabinet to which third parties had access did not destroy presumption that testator made alterations and intended to revoke will); *In re Cabler's Estate*, 257 P. 757, 759 (Okl. 1927) (fact that testator,

Under the facts of this case we cannot say as a matter of law that Field's will was not found among his effects. Therefore, in view of the evidence supplied by OCGA § 53-4-44 that Field intended to revoke his will by obliteration[16] supported by the presumption that he made the obliterations, it was error to grant summary judgment to Anderson.

*Judgment reversed. All the Justices concur, except Benham, C. J., Hunstein and Thompson, JJ., who dissent.*

BENHAM, Chief Justice, dissenting.

I respectfully dissent to the majority opinion because I believe that the common law presumption that a testator made marks on a will where a will is found altered among his personal effects should not apply in this case because Field's will was not in his secure custody, control or possession at the time the will was found. Since there appears to be no evidence to determine whether or not Field made the marks, the presumption that the testator made the marks if the will was found among his "papers" or "effects" applies. *McIntyre v. McIntyre*, 120 Ga. 67 (2) (47 SE 501) (1904) ("Where the paper is found among the testator's effects, there is also a presumption that he made the cancellations or obliterations."); *Singleton v. Shewmake*, 184 Ga. 785, 787 (193 SE 232) (1937) ("Accordingly, where an instrument found among a decedent's papers was offered for probate as her will . . . a presumption arose that such cancellations or obliterations were made by the deceased. . . ."). In order for the presumption to apply, the will should be in the "control," "custody," or "possession" of the testator at the time of his death. *King v. Bennett*, 215 Ga. 345 (2) (110 SE2d 772) (1959) ("Where it is shown that the copy retained by the testatrix of a will executed in triplicate, which had been in her custody until her death, was found among her papers torn in four parts, and with the signature torn from it, a presumption arises that the destruction was done by the deceased with the intention to revoke the will."); *Porch v. Farmer*, 158 Ga. 55, 58 (122 SE 557) (1924) ("In this dilemma, the courts have adopted the rule that when a will was in the custody of the decedent, and is found after his death bearing upon it evidence of such acts of mutilation or of obliteration as

---

his housekeeper – the proponent – and housekeeper's associate had access to the obliterated will did not destroy presumption of revocation).

[16] But for the presumption in OCGA § 53-4-44, the caveator would not have met his burden of coming forward with some evidence that Field intended to revoke his will by material obliterations. Absent any evidence of Field's intent to revoke, there could be no joint operation of act and intent. *Carter v. First United Methodist Church*, 246 Ga. at 355. It would be irrelevant that he made the obliterations to his will, and the propounder would be entitled to summary judgment. See *Cutler v. Cutler*, 130 NC 1 (40 SE 689) (1902); *Carrithers v. Jean's Ex'r*, 61 SW2d 323 (Ky. 1933), citing *McIntyre v. McIntyre*, 120 Ga. 67; 165 ALR 1221, 1222.

are requisite and sufficient to revoke it, its condition will be presumed to have been the work of the testator, done with intent to effect its revocation.").

Field's will can be said to have been found among Field's effects since his pickup truck was a personal item, notwithstanding the fact that it cannot be said to have been found among his papers, given that the will was found away from the safe deposit box where he kept his other important papers. However, it is less clear whether the will could be considered in Field's control, custody, or possession at the time of his death, given that motor vehicles are generally accessible to third parties and that there is no evidence that Field kept the will in his truck under his exclusive control. In order for the presumption to apply, I would hold that a testator should have control, custody, or possession of the will to the extent that it is reasonably certain that no third party had opportunity to alter the will. In *Porch*, this Court noted the fact that a testatrix had exclusive control of her will in support of applying the presumption that she destroyed the will when it was found in a locked trunk to which only the testatrix had the key. *Porch,* supra at 62. Other jurisdictions have also noted the significance that the will be in the custody and control of the testator or testatrix at the time of death. See, e.g., *In re Estate of Olmsted*, 54 P. 745, 746 (Cal. 1898) (Presumption applied that testator made numerous markings on his will where the will "during the lifetime of the maker, had been in his secure possession" in a tin box to which only the testator had the key.); *In re Rowe's Estate*, 165 NYS 1065 (1917) (Testatrix not presumed to have torn will that, during her lifetime, was "at all times easy of access to others."); *In re Flynn's Estate*, 30 NE2d 970, 972 (Ill. App. 1940) (Marks made on will were presumed to have been made by testatrix where the will was found in a safe deposit box under the "exclusive control" of the testatrix); *In re Frazell's Estate*, 19 NYS2d 989, 991 (1940) (Presumption applied that testator mutilated will where access to the will was available only to the testator and sole beneficiary of will and there was "no idea that anyone having access to the instrument had an interest to destroy the will.").

There is no evidence that Field made the marks on his will. The will was found in his pickup truck which, by its nature, is accessible to third parties. Without further evidence, I would not presume Field made the marks on the will because it was not in his secure custody, control or possession. Thus, I would find that the trial court did not err in granting appellee Anderson's motion for summary judgment.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED JULY 5, 2000 —
RECONSIDERATION DENIED JULY 28, 2000.

*Robert M. Dyer & Associates, Robert M. Dyer,* for appellant.
*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Susan S. Stuart, Melissa W. Gilbert,* for appellee.