S09A1857. PETERSON et al. v. HARRELL.

(690 SE2d 151)

THOMPSON, Justice.

Testator Marion E. Peterson died in 2008. She was survived by her two siblings, Arvin Peterson and Carolyn Peterson Basner (caveators). After testator's death, Vasta Lucas, testator's longtime companion and executor of testator's estate, filed a petition to probate testator's will in solemn form. Lucas died during the pendency of this appeal, and appellee Richard Harrell was appointed as successor executor and trustee for the estate. Caveators filed a caveat to the petition to probate alleging the will was not properly executed or had been revoked due to obliterations. The trial court admitted the will to probate and caveators appealed. We affirm.

1. OCGA § 53-4-20 (b) of the Revised Probate Code of 1998 provides that "[a] will shall be attested and subscribed in the presence of the testator by two or more competent witnesses." The record evidence in this case establishes that testator executed a will on June 9, 1976. The will was witnessed by two subscribing witnesses, only one of whom was living at the time of trial. Having been provided a copy of testator's will, the surviving witness testified to its due execution by deposition testimony presented at trial and via written interrogatories filed with the court. See OCGA § 53-5-23 (methods of examining witnesses to a will). Caveators presented no evidence challenging either the validity of the signatures on the will or testator's capacity at the time the will was executed. Accordingly, the evidence supports the trial court's finding that the will was duly executed. OCGA § 53-4-20 (b).

2. The will contained a bequest to Lucas in the form of a trust and provided that upon Lucas' death the trustee shall distribute any remaining assets to four beneficiaries, including caveators. Some time after the will was executed, testator struck through with an ink pen the names of all successor beneficiaries of the trust estate, as well as language in the will nominating Richard Harrell as successor executor and trustee. None of the strike-throughs were witnessed or attested to. Near the end of the will, testator wrote, "My executrix is

Julie Peterson.''[1] Caveators contend these alterations constitute material cancellations that effect a revocation of the will.

To effect a revocation of a will by obliteration, caveators must show that testator made material obliterations to her will or directed another to do so and that testator intended for this act to revoke the will. See OCGA §§ 53-4-41, 53-4-44. Joint operation of act and intention is necessary to revoke a will. *Lovell v. Anderson*, 272 Ga. 675, 676 (533 SE2d 64) (2000). The intent to revoke the will in its entirety shall be presumed from the obliteration or cancellation of a material portion of the will, but such presumption may be overcome by a preponderance of the evidence. OCGA § 53-4-44. See *Hartz v. Sobel*, 136 Ga. 565 (71 SE 995) (1911) (cancellation of material portion of will raises presumption of intention to revoke the whole). ''Revocation pro tanto by obliteration, canceling, or destroying such part is not authorized in Georgia.'' *Price v. Hill*, 184 Ga. 191, 195 (190 SE 575) (1937); *Hartz*, supra.

Even assuming, arguendo, that the alterations to testator's will constituted a material cancellation within the meaning of OCGA § 53-4-44, we find no error in the trial court's conclusion that testator did not intend to revoke her entire will. The record supports the trial court's findings that caveators had no knowledge of the circumstances surrounding what they allege to be the revocation of the will, that testator never discussed revoking her will with cave-ators, and that caveators were not present when testator made the alterations to the will. Caveators presented no evidence of testator's intent other than the alterations themselves, and they satisfied their initial burden only by proving that testator made alterations to the will.

The record also shows, however, that the will was found in good condition on testator's desk among her personal papers. It bore the signatures of both testator and her subscribing witnesses and set out a primary bequest to Lucas which remained intact. Handwritten alterations crossing out the names of the successor beneficiaries with a single line were initialed by testator and she added language to the will indicating her desire to substitute Julie Peterson as her execu-trix. As found by the trial court, this evidence clearly indicates testator's intent to cancel only certain provisions of the will, not an intent to revoke the will in its entirety as required for revocation under OCGA § 53-4-44.

We have found similar evidence of a testator's intent to cancel certain provisions of a will sufficient to overcome the statutory presumption of intent. *Morris v. Bullock*, 185 Ga. 12 (194 SE 201)

---

[1] The parties do not dispute that these handwritten alterations were made by testator.

(1937). In *Morris*, the testator made handwritten alterations to her will, including the addition of a marginal notation stating, "I do not give High Museum anything," which language contradicted the will's specific devise of property to the High Museum of Art in Atlanta. Recognizing that the issue of whether obliterations are made with the intent to revoke a will in its entirety "finally turns upon the intention of the testator," and that "no mere presumption can be allowed to defeat this intention when it has been made to appear," id. at 24 (quoting *McIntyre v. McIntyre*, 120 Ga. 67 (47 SE 501) (1904)), we held that the notation eliminating a particular devise and the fact that the will was found in a safety deposit box with testator's other personal effects clearly demonstrated her intention to revoke only one item of the will. *Morris*, supra at 25-26. Because the evidence showed only an intent to effect a revocation in part, which is not allowed in Georgia by obliteration or cancellation, we concluded that the will was properly admitted to probate. Id. at 26. See also *Carter v. First United Methodist Church*, 246 Ga. 352 (2) (271 SE2d 493) (1980) (pencil marks crossing out property disposition in will); *Cornelius v. Crosby*, 243 Ga. 26 (6) (252 SE2d 455) (1979) (unsigned, unattested, handwritten alteration of no effect to validity or construction of will).

As in *Morris*, the record here demonstrates by a preponderance of the evidence testator's intent to cancel or amend only certain provisions of her will. Caveators thus failed to prove a cancellation by obliteration under OCGA § 53-4-44, and the petition to probate in solemn form was properly granted.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Carley, P. J., who dissent.*

CARLEY, Presiding Justice, dissenting.

I cannot agree with the affirmance of the trial court's admission of Testatrix Marion Peterson's alleged will to probate. Even assuming that the will was duly executed in 1976, the cancellation of a material portion of the will raises the presumption, which has not been rebutted, that Testatrix intended to revoke the entire will. Although the majority purports to assume the existence of a material cancellation, it actually conflates the separate issues of what constitutes an obliteration or cancellation, what is a material portion of the will, and how the intention to revoke is determined. Thus, I respectfully dissent.

> An express revocation may be effected by any destruction or obliteration of the will done by the testator with an intent to revoke or by another at the testator's direction. The intent to revoke shall be presumed from the oblitera-

> tion or cancellation of a material portion of the will, but
> such presumption may be overcome by a preponderance of
> the evidence.

OCGA § 53-4-44. Thus, an intention to revoke will be presumed from either "the obliteration or canceling of a material portion of the will. In Georgia, the drawing of [even] pencil lines through provisions of a will is a sufficient 'canceling.' [Cit.]" *Carter v. First United Methodist Church of Albany*, 246 Ga. 352, 354 (2) (271 SE2d 493) (1980). In this case, the names of all successor beneficiaries were stricken through by a single ink line. Under Georgia law, this constituted an actual cancellation of a portion of the will and, contrary to the majority, was not a mere unsuccessful attempt. See *Carter v. First United Methodist Church of Albany*, supra. Compare *Wells v. Jackson*, 265 Ga. 181, 182-183 (453 SE2d 690) (1995) (no evidence of actual cancellation of beneficiaries' names where marks at issue were smudges which in no way obscured those names); *Cornelius v. Crosby*, 243 Ga. 26, 28 (6) (252 SE2d 455) (1979) (no contention that the predecessor to OCGA § 53-4-44 applied to the attempted alteration of a required age for a beneficiary); *Payne v. Payne*, 213 Ga. 613, 614 (100 SE2d 450) (1957) (unsuccessful attempt to destroy will where "no word contained in the will [was] destroyed or rendered obscure in the slightest degree").

Because there was an actual cancellation of the names of all successor beneficiaries, the next question presented is whether that cancellation "is 'material' within the meaning of the statute. . . . Whether [it] is material such as will invoke the statutory presumption that the testator intended to revoke his will is a question of law for the court. [Cits.]" *Lovell v. Anderson*, 272 Ga. 675, 676 (1) (553 SE2d 64) (2000).

> Under the code it is provided that an intention to revoke the
> will will be presumed from the obliteration or cancellation
> of a material portion of it. It was argued that the word
> "material" meant essential. But the language of the code
> indicates that it does not use the word in so restricted a
> meaning. . . . In Black's Law Dictionary the word "material" is defined to mean "important; more or less necessary;
> having influence or effect; going to the merits; having to do
> with matter, as distinguished from form."

*Hartz v. Sobel*, 136 Ga. 565, 578 (71 SE 995) (1911). The will provided that the entire estate was to be held in trust for the primary beneficiary during her lifetime and that, upon her death, the entire remaining estate would be distributed to the successor beneficiaries

550

in a specified manner. The cancellation of all of their names "was material because it directly affected the distribution of all property in the estate." *Lovell v. Anderson*, supra.

Because the striking of the beneficiaries' names was a material cancellation, it "gave rise to a rebuttable presumption under OCGA § 53-4-44 that [Testatrix] intended to revoke [her] entire will. [Cit.]" *Lovell v. Anderson*, supra. Furthermore, as the majority recognizes, Testatrix's will was found on her desk among her personal papers. Where, as here, a will containing cancellations or obliterations is found among the testatrix's effects or in her custody, a common law presumption arises that she made the obliterations or cancellations. *Carter v. First United Methodist Church of Albany*, supra at 353 (2); *Lovell v. Anderson*, supra at 675, fn. 2, 677 (2). As a result of the evidence supplied by the presumption in OCGA § 53-4-44 that Testatrix intended to revoke her will, supported by the presumption that she made the cancellations, Caveators Arvin Peterson and Carolyn Peterson Basner clearly met their burden of coming forward with some evidence that Testatrix intended to revoke her will by material cancellations. *Lovell v. Anderson*, supra at 678 (2), fn. 16.

Neither the majority nor Appellee Richard Harrell points out any evidence in rebuttal. There is no parol evidence as to the acts and declarations of Testatrix, although such evidence is admissible. See *King v. Bennett*, 215 Ga. 345, 349-350 (110 SE2d 772) (1959). The nature of the cancellations themselves obviously does not rebut the very presumption which they raise. The fact that Testatrix also cancelled another, less material provision, by altering the appointment of an executrix, is simply evidence of even more extensive cancellation than is necessary to raise the presumption of intent to revoke the entire will.

In its zeal to overcome that presumption, the majority relies upon *Morris v. Bullock*, 185 Ga. 12 (194 SE 201) (1937) as finding "similar evidence of a testator's intent to cancel certain provisions of a will sufficient to overcome the statutory presumption of intent." (Majority Opinion, p. 547) However, this Court held in *Morris*, supra at 12 (1), that the trial court there "did not err in determining that the alteration made in the will was not so material as to create a presumption of intention to revoke the entire instrument." Thus, it appears that this Court, rather than relying on rebuttal of the presumption, determined that no such presumption ever arose in that case. Furthermore, the will provision cancelled in *Morris*, unlike the portions cancelled here, bequeathed only a few described articles of personalty and, therefore, clearly was not material.

Moreover, this Court has held that the specific language relied upon by the majority, found in *Morris v. Bullock*, supra at 25-26,

"completely contradicts the statute ([cit.]) which attaches to . . . obliterations or cancellations of [a] material portion of the will a presumption that they were done with an intention to revoke the whole will." *Howard v. Cotton*, 223 Ga. 118, 122 (153 SE2d 557) (1967). Even if any language in *Morris* remains viable and can be construed as the majority desires, it is also contrary to *Lovell v. Anderson*, as discussed above. Being the more recent cases, *Howard* and *Lovell* constitute the controlling authority pursuant to *Hall v. Hopper*, 234 Ga. 625, 629 (3) (216 SE2d 839) (1975). See *Hardeman v. State*, 272 Ga. 361, 362 (529 SE2d 368) (2000).

Accordingly, contrary to the majority opinion, evidence of a material cancellation and an intent thereby to revoke the entire will arises from the face of the will and from the correct application of presumptions long established by Georgia law, and there is a total absence of any evidence to the contrary. The rationale and operation of the presumption in OCGA § 53-4-44 have been extensively considered and well settled, and any change therein should be solely a matter for the legislature. Therefore, the trial court's judgment against Caveators should be reversed.

I am authorized to state that Chief Justice Hunstein joins in this dissent.

DECIDED FEBRUARY 1, 2010 —
RECONSIDERATION DENIED MARCH 1, 2010.

*Tom Pye*, for appellant.
*Perrotta, Cahn & Prieto, Michael S. Goode*, for appellee.