In the Matter of the Estate of EVERSON FRAZELL, Deceased.

Surrogate's Court, New York County, April 25, 1940.

*Benjamin Schaffer* [*Murray Kurman* of counsel], for the proponent.

*William Pickens, Jr.*, for the claimants.

DELEHANTY, S. With the petition for probate herein there was presented a carbon copy of an instrument of which an original concededly was executed by deceased with requisite formality. With the petition also there was presented a number of fragments of what had once been the executed original imprint of the instrument. Concededly these fragments were found in deceased's home, were assembled by proponent and were by her pasted together on wrapping paper in the form in which they are presented to the court. The original instrument consisted of a first and second sheet on which the dispositive clauses are typed, a third sheet on which the attestation clause alone is typed and a cover sheet which at the top of the instrument is folded over about seven-eighths of an inch. Staples are driven through the fold of the cover sheet, through all of the three sheets of the document and through the cover itself. As the original is presented to the court there is a tear through its top margin which completely severs all of its sheets. This tear continues through the center of the sheets to about the middle of the document and then deviates to the right margin.

The upper right-hand segment of the instrument thus detached from the balance of it is again torn approximately in half from the right-hand margin through all the sheets to the center. The fragment that contained the upper left-hand portion is also torn diagonally across its upper half to a point which meets the first tear described. This portion of the will is again torn at the center so that this tear also meets the first tear described. The lower half of the document is torn so that there are five separate portions. These tears in most instances involve all of the sheets and probably the cover though the lower half of the cover is missing and exact knowledge of the facts is, therefore, impossible. As presented, the first sheet is in seven visible fragments with an eighth fragment missing. The missing fragment filled a space about three inches long and two inches wide. The second sheet is in five visible fragments with possibility that there were three others. All the lower third of this sheet is missing. The third sheet is in six visible fragments with possibility that there were two others. A quarter of this sheet is missing. The cover sheet so far as presented seems to be in three fragments but most of it is missing. Text is missing only as respects the first sheet.

The original instrument was delivered to the testator after its execution. Presumably the instrument continued in his custody. So far as any proof exists in the record on the subject of custody it confirms a continuance of custody by deceased though — if believed — it admits also of a finding that access to the instrument was possible to others than deceased. If the will were not discovered at all the presumption would attach that deceased destroyed it with intent to revoke it. It would be an anomaly if the court were to hold that a stronger presumption attached to a total absence of the instrument than attaches to the production of the instrument so mutilated as to require an inference of intentional destruction. There is here no idea that any one having access to the instrument had an interest to destroy the will. The proof is to the contrary. Access to the will was available only to deceased and to the sole beneficiary under the instrument. The latter would be interested only in preserving the instrument since she takes nothing otherwise. So we have a record in which only deceased could have had an interest in destroying the will. In such circumstances the presumption of destruction by the testator for the purpose of revoking the will must be applied. (*Matter of Kennedy,* 167 N. Y. 163; *Matter of Sheldon,* 158 App. Div. 843; *Matter of Staiger,* 243 N. Y. 468; *Matter of Hopkins,* 172 id. 360, 363; *Matter of Parsons,* 119 Misc. 26; affd., 204 App. Div. 879; affd., 236 N. Y. 580; *Matter of Ten Eyck,* 155 Misc. 443; *Matter of Kathan,* 141 N. Y. Supp. 705,

716; *Matter of Miller*, 51 Misc. 156.) Suggestions respecting the burden of proof which may be found in cases dealing with fact situations where access was possible on the part of persons interested in the destruction of the will are not here applicable. Such cases need not be discussed.

In an effort to account for the condition of the paper the proponent and sole beneficiary testified that for years it had been kept in an envelope in a pigeon-hole in the desk used by deceased in the apartment which the proponent occupied with him and that with its envelope it was mutilated in deceased's absence by a child visitor to proponent. Proponent says that she gathered up the fragments and put them in an envelope without calling the facts to the attention of the testator in his lifetime because she feared his anger. The fragments thus gathered up were held by proponent until deceased died and were then pasted together by her for presentation to the court. In examining the validity of this story it is pertinent to note that the witness had been living in meretricious relations with deceased and can have no share in his estate unless the will is proved. Though she swore in her testimony that she was his widow she had when she testified, and presumably still has, a living husband. In attempted extenuation of her living with deceased she said she had once hired a lawyer to procure a divorce for her and assumed he had done so. But the record develops that this lawyer was known not to have procured the divorce at least as early as 1935, and so it is clear that the irregular relationship between the witness and deceased continued for several years with full knowledge on her part of its character. In her testimony she twice said that the child reported to have torn up the instrument was four years old. In a later session of the inquiry she said the child was "about three," and then finally said the child was not yet three. She said that the envelope in which the will was kept was also torn up but she did not collect the pieces of it and did not produce them. She said she gathered up the pieces of the will immediately upon discovering the conduct of the child, but she does not account for the missing portion of the text of the first page nor for any of the missing parts of the other pages. These missing fragments form a substantial part of the whole instrument and if on the floor or desk at the time of the reported act of destruction by the child could not have been overlooked. Her testimony when examined closely does not contain any statement that she saw the child tear any part of the will except a "portion of it in her hand" at the time the supposed destruction was discovered. Nothing in her story negatives the likelihood that the child (if the whole story is not a fabrication) found the pieces already torn.

The physical evidences negative the possibility that a three-year-old child could have wreaked the destruction shown by the present condition of the original document. To find any basis for belief in the testimony offered in respect of the supposedly accidental destruction of the will it must be assumed that this child not yet three took out of its pigeon-hole the envelope which contained the will, opened the envelope and withdrew and unfolded the will which was therein. None but a strong man could tear up a four-page document folded in four folds and held within an envelope. It would require strength as well to tear up the instrument while it was in folds though not in an envelope. The court is asked to believe that this little child unfolded the document and then was capable of the injury to it which is evidenced by its present condition. Inspection of the injury makes it clear that the damage to the paper is not due to the aimless mischief of a child but, on the contrary, is plainly due to the purposeful act of someone of substantial strength of hand who was engaged in the deliberate mutilation of the document. The tears through the respective sheets are uniform in the relation of each sheet to the others. The location of the tears evidence a purpose to mutilate the instrument to a degree which would make impossible any dealing with it ever again as an integral whole. The mutilation was a designed and not an accidental destruction. It had for its purpose the destruction of the integrity of the document. That intended destruction was accomplished.

The record before the court consists of the petition with its exhibits, the fragments of the original instrument and the testimony taken in the inquiry conducted in every instance as a preliminary to probate. This record has been stipulated to be the final record on which decision is to be made by the court. The court is bound to inquire particularly into all the facts and circumstances surrounding every instrument propounded as a will and must be satisfied that at the testator's death the instrument was an extant validly executed document before admitting it to probate. That finding cannot be made in respect of this paper. The court holds that the propounded paper was revoked by deceased in his lifetime. Probate is denied.

Submit, on notice, decree accordingly.