S93A0722. HART v. FORTSON.
(435 SE2d 45)

HUNT, Presiding Justice.

L. C. Hart appeals the trial court's grant to S. T. Fortson of j.n.o.v. We reverse and remand.

Boyd Fortson, the testator, executed a will dated April 22, 1991, in which he left all of his property to his brother, S. T. Fortson. In September 1991, L. C. Hart, Boyd Fortson's nephew, arranged for the preparation of a new will for his uncle which named him executor and sole beneficiary. Hart took this will to his uncle's house, where it was executed by Fortson in the presence of witnesses. The probate court denied Hart's petition to probate the will and granted S. T. Fortson's caveat, finding that Hart, as propounder of the will, had failed to prove that the testator knew the contents of the will or that he had testamentary capacity. On appeal to the superior court (OCGA § 5-3-2), a jury rendered a verdict in favor of Hart, but the trial court granted Fortson's motion for j.n.o.v.

In reviewing the grant of a j.n.o.v.,

we must decide whether all the evidence demanded it, or whether there was some evidence supporting the verdict of the jury. [Cit.] A judgment notwithstanding the verdict is improperly granted in the face of conflicting evidence, and an appellate court must view the evidence in the light most favorable to the party who secured the jury verdict. [Cit.]

*Pendley v. Pendley*, 251 Ga. 30, 30-31 (302 SE2d 554) (1983). In his motion for j.n.o.v., S. T. Fortson contended that the testator did not know that the document he was signing was his will, and had no knowledge of the contents of the will, and the trial court granted the motion on these grounds. Evidence was presented, as is acknowledged in Fortson's motion for j.n.o.v., that the testator, in the presence of others, when he signed the will, stated that he wanted to leave all his property to L. C. Hart; there was also testimony that the testator talked with an attorney about a new will several days before his death. There exists, therefore, a conflict in the evidence as to the testator's knowledge of both the document's nature and its contents. Since there was sufficient evidence to support the jury's verdict, the trial court's j.n.o.v. must be reversed. The case is remanded to the trial court for consideration of the motion for new trial filed contemporaneously with the motion for j.n.o.v. OCGA § 5-5-21.

*Judgment reversed. All the Justices concur, except Fletcher, J., who dissents.*

FLETCHER, Justice, dissenting.

Because I believe that the propounder did not meet his burden to present strong proof that the testator knew the contents of the will, I disagree with the majority opinion that there was sufficient evidence to support the jury's verdict, and respectfully dissent.

On the evening of September 6, 1991, Boyd Fortson, the testator, was at home in a hospital bed in a severely weakened condition caused by cancer which resulted in his death on September 11, 1991. L. C. Hart, Boyd Fortson's nephew, arranged for the preparation of a will for his uncle which named Hart executor and sole beneficiary. Hart arranged for a neighbor and the friend of one of Boyd Fortson's brothers to witness the document. Neither of these witnesses knew that they were witnessing the execution of a will. They only heard talk about a "living will." Hart had folded the document back to the signature page when the witnesses signed it. Boyd Fortson could not read and no one read the document to him. The witnesses testified that Boyd Fortson did not say a word the night of the signing. One witness testified he was "just a warm body in bed," "did not speak to me," and "gave no sign of recognition or anything" and the other stated that Boyd did not know her that night. In fact, while the at-

testing witnesses were present, Boyd Fortson did not acknowledge anyone's presence in the room that night. L. C. Hart testified that at some point during the evening Boyd Fortson said "I want a will made to L. C." No other witness corroborates this testimony. Hart admits that he did not read the will to the testator and that the testator never read the will himself. There is no other evidence relating to the testator's knowledge of the contents of the will. Additionally, after the will was signed, L. C. Hart took it home with him and there is no evidence that it was ever in the possession of the testator.

1. In all cases, in order for a will to be valid, the testator must have knowledge of its contents. OCGA § 53-2-42. If the testator can read and write, his or her signature (or acknowledgment thereof) raises a presumption that he or she knew the contents of the will. *Beall v. Mann*, 5 Ga. 456, 469 (1848). However, there are certain instances where this presumption not only does not arise, but the propounder is required to produce greater proof to establish that the testator knew the contents of the will.

One such instance where a greater burden of proof is placed on the propounder to show knowledge of the contents of a will by the testator is when "the scrivener or his immediate relations are large beneficiaries under the will . . ." OCGA § 53-2-42 and another is when the testator is blind, illiterate or otherwise cannot read the will. *Woodson v. Holmes*, 117 Ga. 19, 29-30 (43 SE 467) (1903). When such instances occur, the propounder must present strong proof that the testator knew the contents of the will. See *Beall v. Mann*, supra; *Woodson v. Holmes*, supra; and *Whitfield v. Pitts*, 205 Ga. 259 (53 SE2d 549) (1949).

In *Hughes v. Meredith*, 24 Ga. 325 (1858) this court set out the type of evidence that a propounder must present to provide "strong proof" of the testator's knowledge of the contents of a will:

> [to prove] . . . that the testator knew the contents of the will, it is necessary to prove that the will was read to him, or read by him, or that he gave instructions for such a will, or to prove some other fact or facts, equal as evidence to one of these.

Id. at 329, 330. Additionally,

> whenever the *capacity* of the testator, or testatrix, at the time of the execution of the will, is in any degree *doubtful*, there must be proof of instructions given, or of reading it over; the more especially, when the will is drawn by one who takes a *beneficial interest* under it.

*Harvey v. Anderson*, 12 Ga. 69, 76 (1852).

2. L. C. Hart procured the will, conducted the execution of the will and is the sole beneficiary of the will. It is undisputed that Boyd Fortson could not read. The testimony of the witnesses concerning Fortson's demeanor at the signing raises doubt as to Fortson's capacity. The existence of any one of these factual situations is sufficient to require Hart to prove Fortson's knowledge by "strong evidence."

Hart did not present any "strong evidence," as defined in *Hughes*, to show that Boyd knew the contents of this will. The uncontradicted testimony of all of those present was that Boyd Fortson neither read the will nor had it read to him. There is no evidence that the will was ever in Fortson's possession, rather, the only evidence is that the will, before and after its execution, remained in the hands of L. C. Hart. There is no evidence Boyd Fortson gave any specific instructions concerning the creation of a will and, even if he did, there is no evidence that the contents of this will reflect any specific instructions he may have given.[1]

Absent the strong proof required under these circumstances, the propounder has not carried his burden of proof with regard to knowledge of the contents of the will by the testator. Since such knowledge is a necessary element to establish the validity of a will, the propounder has not proven his case and the trial court's order granting a j.n.o.v. should be affirmed.

DECIDED OCTOBER 4, 1993.

*L. Chandler Vreeland, Jason R. Hasty,* for appellant.
*R. Dale Perry,* for appellee.

---

[1] The majority's reference to testimony by Hart and his son that the testator talked to an attorney does not support the conclusion that the testator had knowledge of the contents of *this* will. Assuming the conversation did occur, neither party to the telephone conversation (the deceased and the attorney) testified as to the contents of this conversation. If Boyd Fortson did give the attorney instructions concerning the making of a will, there is no testimony as to what those instructions were or that the will produced by Hart for signature reflects the wishes related to the attorney.