## A02A1414. HAM v. HAM et al.
(571 SE2d 441)

ELLINGTON, Judge.

Sarah Ellen Ham, as the executrix of the estate of her husband, James Amos Ham, sued her nephews, Phillip and James Ham, to col-

---

lect on a bill of sale to secure a debt. The nephews admitted executing an agreement to pay the decedent $50,000 for 200 head of beef cattle, but claimed the debt had been satisfied. The nephews presented a document purportedly signed by James Amos Ham releasing them from the debt in exchange for $32,000. Even though the executrix claimed her husband's signature was forged, the superior court granted the nephews' motion for summary judgment, which was based upon the defense of accord and satisfaction. The executrix appeals, contending that material issues of fact remain for jury resolution. We agree and reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review to an appeal from a grant of summary judgment and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). Viewed in this light, the record reveals the following relevant facts.

James Amos Ham was hospitalized shortly before his death. One of the nephews, Phillip, and Phillip's father, Benson Ham, visited the decedent in the hospital. The executrix was also there. During this visit, the executrix witnessed her husband sign a quitclaim deed conveying certain real property to the nephews in exchange for $32,000. Benson Ham, on behalf of the nephews, prepared the documents the decedent signed. The executrix testified that her husband was legally blind and could not read. Although the executrix witnessed, as planned, the signing of the quitclaim deed, she never saw anyone present for her husband's signature a document purporting to release the bill of sale to secure debt. The executrix testified that she left the room briefly to use the restroom, and that when she returned, Phillip and Benson quit talking immediately and her husband appeared agitated. The executrix stated in both her deposition and affidavit that she did not recognize the signature on the document, that it was not her husband's signature, and that it was, in fact, a forgery. The executrix also testified that her husband never intended to forgive the $50,000 debt for the cattle.

The nephews argue on appeal, as they argued below, that they were entitled to summary judgment because the affidavit testimony of the witnesses who allegedly observed the decedent execute the document releasing the debt proved an accord and satisfaction as a matter of law. Citing OCGA § 24-7-6,[1] they contend the executrix's lay

---

[1] Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness who shall swear that he knows or would recognize the handwriting shall be competent to testify as to his belief. The source of his

testimony contesting the authenticity of her husband's signature is inadmissible in light of their "direct evidence of execution." That Code section, however, does not exclude opinion testimony on the authenticity of a signature when direct evidence of execution is available. "The reason [such testimony is not excluded] is obvious; such an instrument requires proof of execution before it can be admitted [into] evidence, but, because this is so, it does not follow that it must be conclusively taken as . . . genuine." *McArthur v. Morrison*, 107 Ga. 796, 798 (34 SE 205) (1899). In fact, upon proof of execution, "the genuineness of the instrument may be attacked by competent evidence on the trial of the case in which the instrument is sought to be used. Its admission is not decisive of its genuineness." Id. Thus, a jury could still conclude that the instrument or the signature on it was forged. See id. See also Rumsey, Agnor's Ga. Evidence (3rd ed.), § 12-4.

In this case, the executrix may offer opinion evidence attacking the authenticity of her husband's signature. A witness can give lay opinion testimony identifying handwriting if the witness knows the handwriting or is so familiar with it that he or she would recognize it. See, e.g., *Johnson v. Knebel*, 267 Ga. 853, 856 (2) (485 SE2d 451) (1997); *Carnes v. Woodall*, 233 Ga. App. 797, 798-799 (1) (505 SE2d 537) (1998); *Copeland v. State*, 66 Ga. App. 142, 143, hn. 4 (17 SE2d 288) (1941). Here, the executrix testified she believed her husband's signature was a forgery. Moreover, she testified that her husband did not intend to forgive the debt. Given this testimony and the circumstances under which the document was executed, a jury could find that the signature was a forgery and could infer collusion by the witnesses who allegedly witnessed the execution. These facts, and the inferences that reasonably may be drawn from them, were sufficient to raise a material issue of fact regarding the authenticity of James Amos Ham's signature as well as his intention to release the nephews from the $50,000 debt. Consequently, the trial court erred in granting summary judgment based upon an accord and satisfaction.

*Judgment reversed. Smith, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 17, 2002.

---

knowledge shall be a question for investigation and shall go entirely to the credit and weight of his evidence.
OCGA § 24-7-6.

*Martin L. Fierman*, for appellant.
*W. Franklin Freeman, Jr.*, for appellees.