295 Ga. 225
FINAL COPY

S14A0260.   AMMONS et al. v. CLOUDS et al.

HINES, Presiding Justice.

Ellis Ammons and Tomasia Ammons, the propounders of a will of Eulady Thomas, appeal the judgment of the trial court granting a directed verdict in favor of the caveators in the trial of the caveat to the will.  For the reasons that follow, we reverse.

Thomas executed a will on October 16, 2007; she was blind at the time. The will left all of her property to her caregiver,  Tomasia Ammons, and Tomasia's husband Ellis ("Propounders").  Following Thomas's death on April 26, 2011, Propounders petitioned to probate the 2007 will in solemn form. Margie Lee Clouds and other members of Thomas's family ("Caveators") objected to the will's validity on the grounds, inter alia, that Thomas did not sign the will and that the witnesses to the will's execution did not sign it.  The probate court admitted the will to probate in solemn form; Caveators appealed to the superior court and demanded a jury trial.  Although the jury found that the

propounded will was Thomas's valid last will and testament, the trial court granted Caveators' motion for directed verdict.[1]

1. At the time of trial, both witnesses to the propounded will were deceased. Propounders sought to invoke OCGA § 53-5-24, under which, when a witness to a will is not available to testify, the trial court may admit the will to probate "upon the testimony in person or by affidavit or by deposition of at least two credible disinterested witnesses that the signature to the will is that of the individual whose will it purports to be . . . ."[2] Propounders contend that the superior court erred in excluding from trial certain testimony of Kelly, the

---

[1] At trial on February 14, 2013, Caveators moved for a directed verdict, and the trial court reserved judgment on the motion. The jury returned a verdict for Propounders, and on March 8, 2013, Caveators filed a written renewal of their motion for directed verdict. On March 19, 2013, the court entered judgment on the jury's verdict; the judgment did not mention the motion for directed verdict. Caveators filed a motion for judgment notwithstanding the verdict on March 22, 2013, and the trial court granted the motion for directed verdict on August 26, 2013. See OCGA § 9-11-50 (b); *Continental Ins. Co. v. State Farm Mut. Ins. Co.*, 212 Ga. App. 839, 840-842 (1) (443 SE2d 509) (1994).

[2] OCGA § 53-5-24 reads:

When it appears that a will cannot be proved as otherwise provided by law because at the time the will is offered for probate one or more of the subscribing witnesses to the will is dead or mentally or physically incapable of testifying or otherwise inaccessible, the court may admit the will to probate in common or solemn form upon the testimony in person or by affidavit or by deposition of at least two credible disinterested witnesses that the signature to the will is that of the individual whose will it purports to be or upon other sufficient proof of such signature. This Code section shall not preclude the court, in its discretion, from requiring, in addition, the testimony in person or by deposition of any available subscribing witness or proof of such other pertinent facts and circumstances as the court may deem necessary to admit the will to probate.

attorney who drafted the will, and Lane, his office assistant, regarding the authenticity of Thomas's signature. During Kelly's testimony, Propounders showed him two other documents, prepared by him, that were signed by Thomas in 2010 and 2011, and asked whether it was true that, in the course of his work for Thomas, he had become "somewhat . . . a little bit familiar with her signature." Kelly responded that Thomas's signature was different on each of the documents he was shown, and different still on the 2007 will, but because he saw her sign the 2010 and 2011 documents, he could testify that those signatures were hers, even though different from each other. Propounders then asked, even though Kelly was "not a handwriting expert or anything like that, but is the signature on the will, based upon your knowledge of her signature, is it consistent with her formal signature?" At this point, Caveators objected, arguing that Kelly was not a handwriting expert and could not testify as to such a conclusion, and the court sustained the objection.

Regarding Lane's potential testimony, at a later point in the trial, Propounders stated to the court that if they called Lane to testify, they would ask her whether the signature on the 2007 will was consistent with Thomas's signature on the 2010 and 2011 documents; Caveators declared that in such

circumstance, they would raise the same objection made when the question was asked of Kelly, and the court indicated that it would make the same ruling it had made at that time. Propounders did not call Lane to testify.

Propounders contend that Kelly and Lane should have been permitted to identify the signature on the 2007 will as Thomas's, based upon their familiarity with her signature. *Harvey v. Sullivan*, 272 Ga. 392, 393 (2) (529 SE2d 889) (2000) ("[T]he propounder put on a series of witnesses who established their familiarity with the testatrix's signature and testified that the signature on the will was hers" so as to satisfy OCGA § 53-5-24.). However, Propounders never established that either witness was familiar with Thomas's signature so as to be able to testify that the signature on the will was hers. See OCGA § 24-9-901 (b) (2);[3] *Ham v. Ham,* 257 Ga. App. 415, 417 (571 SE2d 441) (2002) ("A witness

---

[3] OCGA § 24-9-901 reads:
 (a) The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 (b) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Code section:
  (1) Testimony of a witness with knowledge that a matter is what it is claimed to be;
  (2) Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation;
  (3) Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated. Such specimens shall be

4

can give lay opinion testimony identifying handwriting if the witness knows the

handwriting or is so familiar with it that he or she would recognize it."); *Jones*

*v. State*, 165 Ga. App. 260, 260-261 (1) (299 SE2d 920) (1983) (Foundation laid

furnished to the opposite party no later than ten days prior to trial;

(4) Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances;

(5) Identification of a voice, whether heard firs.thand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker;

(6) Telephone conversations, by evidence that a call was made to the number assigned at the time by a telephone service provider to a particular person or business, if:

(A) In the case of a person, circumstances, including self-identification, show the person answering to be the one called; or

(B) In the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone;

(7) Evidence that a document authorized by law to be recorded or filed and in fact recorded or filed in a public office or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept;

(8) Evidence that a document or data compilation, in any form:

(A) Is in such condition as to create no suspicion concerning its authenticity;

(B) Was in a place where it, if authentic, would likely be; and

(C) Has been in existence 20 years or more at the time it is offered;

(9) Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result; or

(10) Any method of authentication or identification provided by law.

5

by testimony that the witness "had seen his brother's signature on enough occasions so that he thought he could recognize it.")[4] Rather, the only relevant testimony that Propounders elicited from Kelly was that Thomas's signature was inconsistent on the documents he had been shown while he was on the witness stand; Propounders never proffered testimony from him that he was familiar with her signature so as to be able to recognize it. And, similarly, no foundation was laid for Lane to testify that she was familiar with Thomas's signature such that she could recognize it if seen. The trial court did not err in excluding the testimony the Propounders sought to elicit.

2. The propounded will was not self-proved; had it been, it would be "rebuttably presumed to have been executed with the requisite testamentary formalities. [Cit.]" *Martina v. Elrod*, 293 Ga. 538 (1) (748 SE2d 412) (2013). Even if not self-proved, under OCGA § 53-5-21,[5] "[a] will may be proved in

---

[4] *Ham* and *Jones* were decided under former OCGA § 24-7-6. Trial in this case was held on February 14, 2013, after the January 1, 2013 effective date of OCGA § 24-9-901. Former OCGA § 24-7-6 was effective prior to January 1, 2013 and read:

> Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case, any witness who shall swear that he knows or would recognize the handwriting shall be competent to testify as to his belief. The source of his knowledge shall be a question for investigation and shall go entirely to the credit and weight of his evidence.

[5] OCGA § 53-5-21 reads:

> (a) A will may be proved in solemn form after due notice, upon the testimony

6

solemn form after due notice, upon the testimony of all the witnesses in life and

within the jurisdiction of the court, or by proof of their signatures and that of the

testator as provided in [OCGA §] 53-5-23."[6]    See also *Singelmann v.*

_____

of all the witnesses in life and within the jurisdiction of the court, or by proof of their signatures and that of the testator as provided in Code Section 53-5-23. The testimony of only one witness shall be required to prove the will in solemn form if no caveat is filed. If a will is self-proved, compliance with signature requirements and other requirements of execution is presumed subject to rebuttal without the necessity of the testimony of any witness upon filing the will and affidavit annexed or attached thereto.

(b) The petition to probate a will in solemn form shall set forth the full name, the place of domicile, and the date of death of the testator; the mailing address of the petitioner; the names, ages or majority status, and addresses of the surviving spouse and of all the other heirs, stating their relationship to the testator; and whether, to the knowledge of the petitioner, any other proceedings with respect to the probate of another purported will of the testator are pending in this state and, if so, the names and addresses of the propounders and the names, addresses, and ages or majority status of the beneficiaries under the other purported will. In the event full particulars are lacking, the petition shall state the reasons for any omission. The petition shall conclude with a prayer for issuance of letters testamentary. If all of the heirs acknowledge service of the petition and notice and shall in their acknowledgment assent thereto, and if there are no other proceedings pending in this state with respect to the probate of another purported will of the decedent, the will may be probated and letters thereupon may issue without further delay.

[6] OCGA § 53-5-23 reads:
(a) In all proceedings for the probate of a will in common form or solemn form, witnesses to the will may be examined in person or by written interrogatories which shall be answered in writing and under oath before a notary public or by depositions or other discovery procedures under the same circumstances as other civil cases. The probate court shall have the power to compel the attendance of witnesses in the same manner as the superior court.

(b) Where witnesses are to be examined as authorized by this Code section, a photocopy of the will may be exhibited to the witnesses in lieu of the original will. The testimony of a witness to whom a photocopy of a will has been exhibited shall be given the same weight as though the original will had been exhibited to the witness.

7

*Singelmann*, 273 Ga. 894, 896 (1) (548 SE2d 343) (2001).

Although the witnesses to the propounded will were deceased at the time of trial, they were both in life earlier in the proceedings. Under OCGA § 53-5-23 (a), a witness to a will may testify by written interrogatories or deposition. The interrogatory testimony of one witness was introduced at trial. Using Georgia Probate Court Standard Form 6, the witness testified that Thomas signed the will, acknowledged it, knew that she was executing her last will and testament at the time she did so, executed it voluntarily, and appeared to be of sound and disposing mind; the witness also testified that he witnessed the will at Thomas's request, in her presence, and that he signed the will as a witness. However, this same witness testified by deposition that he had no memory of signing as a witness to the will, although the signature appeared to be his, and that when the will was purportedly signed, he did not watch Thomas sign it, but faced a different direction and spoke to another person. Relevant portions of

---

(c) The provisions of this Code section shall not be construed as repealing any other statutory provision prescribing a method or procedure for the taking of testimony by interrogatories or depositions, but as supplementary of such other provisions and cumulative to such other provisions and as providing additional means or methods of taking the testimony of subscribing witnesses to a will in proceedings for the probate of the will. The taking or procuring of testimony in the manner prescribed by this Code section shall be sufficient for all purposes of the probate proceedings, notwithstanding any other statute.

8

that deposition were read at trial.[7]

This Court has held that the testimony of a single witness to a will's execution by the methods provided for in OCGA § 53-5-23 can authorize the finder of fact to conclude that the will was properly executed. *Peterson v. Harrell*, 286 Ga. 546 (1) (690 SE2d 151) (2010). And, an interrogatory such as that used here meets a propounder's burden to establish a prima facie case. See *Singelmann*, supra. Although there was conflicting evidence from the witness as to whether the will had been properly executed, that simply created factual questions for the jury's resolution. As to the second witness, there was evidence from both Propounders that she signed the will in Thomas's presence.[8]

> [A] directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a); *Scoggins v. Strickland*, 265 Ga. 417, 418 (2) (456 SE2d 208) (1995).

*Dyer v. Souther*, 272 Ga. 263, 265 (2) (528 SE2d 242) (2000).

Caveators note that there is precedent of this Court stating that when a

---

[7] No testimony of the second witness was presented. It is uncontroverted that she was not capable of testifying at any time during the pendency of the case.

[8] The jury was instructed that witness credibility was for its determination, which was to be done in consideration of matters such as a witness's interest in the outcome of the case.

testator is blind, such as Thomas was, more than the ordinary degree of "positive proof that [s]he actually knew and assented [to the contents of the will] is required to repel any suspicion which circumstances may have cast upon the good faith of the transaction . . . ." *Woodson v. Holmes*, 117 Ga. 19, 29 (5) (43 SE 467) (1903).  See also *Hart v. Fortson* 263 Ga. 389, 391 (435 SE2d 45) (1993) (Fletcher, J., dissenting) (In some circumstances, including a blind testator, "the propounder must present strong proof that the testator knew the contents of the will. [Cits.]"). But, to the extent that this precedent imposed a higher burden upon Propounders to present evidence of Thomas's knowledge of the contents of the will, the jury was so instructed, and there was evidence that the will was prepared according to Thomas's wishes, and was read to her before she signed it.

The issues Propounders raised were properly placed before the jury, and it was error for the trial court to grant Caveators' motion for directed verdict.

Judgment reversed.  All the Justices concur.


Decided May 5, 2014 – Reconsideration denied June 2, 2014.

Wills. Jasper Superior Court. Before Judge Wingfield.

Fears, Lawrence & Turner, Kenneth G. Lawrence, for appellants.

Martin L. Fierman, Stephen R. Morris, for appellees.